# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| GEORGE ARNOLD, *et al.*, | : | Case No. 1:13-cv-714 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| ALPHATEC SPINE, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER: (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT (Docs. 15, 19, 24, 25, 26, 44); (2) DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (Doc. 38); AND (3) TERMINATING THIS CASE FROM THE DOCKET OF THE COURT

This civil action is before the Court on Defendants' motions to dismiss (Docs. 15, 19, 24, 25, 26, 44), Plaintiffs' motion for leave to file an amended complaint (Doc. 38), and the parties' responsive memoranda (Docs. 45, 47-54, 56-65, 67-68).  The motions are now ripe for decision.

Plaintiffs' first amended complaint (the "FAC") asserts fourteen claims for relief arising under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961, *et seq.*), the Ohio RICO statutes (Ohio Rev. Code §§ 2923.31, *et seq.*), the Ohio Products Liability Act (the "OPLA") (Ohio Rev. Code §§ 2307.71-2307.80), and Ohio common law.  (Doc. 3).  In substance, however, Plaintiffs are seeking recovery for state law tort claims, improperly repackaged as alleged federal claims.

However, as Plaintiffs' counsel is now fully aware, repackaging personal injury claims under the federal anti-racketeering statutes is not permitted.[1]

## I.  BACKGROUND

This case was initially filed in the Hamilton County Court of Common Pleas on August 28, 2013.  (Doc. 2).  On September 19, 2013, Plaintiffs amended the complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1), adding nine additional plaintiffs. (Doc. 3).  On October 3, 2012, the case was removed to this Court based on the federal RICO claim.  (Doc. 1).  Defendants began filing their motions to dismiss shortly thereafter.  (Docs. 15, 19, 24, 25, 26, 44).  On November 12, 2013, Plaintiffs filed a motion for leave to amend the FAC.  (Doc. 38).

The FAC alleges that from 2011 to 2013, Plaintiffs each underwent surgery involving the use of a tissue allograft product called PureGen. (Doc. 3 at ¶ 6(a)-(d), 69-

---

[1] The instant case is one of at least five related proceedings in which Plaintiffs' attorney, Eric C. Deters, presents this Court with a litany of woefully disorganized and improperly pled personal injury claims.  *See Aaron, et al. v. Durrani, et al.*, Case No. 1:13-cv-202 (S.D. Ohio Mar. 22, 2013) (consolidated with *Aaron, et al. v. Medtronic Sofamor Danek, Inc., et al.*, Case No. 1:13-cv-214 (S.D. Ohio Mar. 29, 2013)); *Aaron, et al. v. Medtronic Inc., et al.*, Case No. 1:13-cv-301 (S.D. Ohio May 6, 2013); and *Bechtold, et al. v. Medtronic, Inc., et al.*, Case No. 1:14-cv-325 (S.D. Ohio Apr. 21, 2014).  In these related cases, the Court has made it abundantly clear that merely invoking the federal racketeering statute does not properly place state law tort claims before this Court.

*See* Doc. 111 in *Aaron, et al. v. Durrani, et al.*, Case No. 1:13-cv-202 (S.D. Ohio Mar. 13, 2014) (**"At the core, Plaintiffs seek recovery in federal court under anti-racketeering laws ("RICO") for their state law personal injury claims, a practice which the Sixth Circuit has expressly rejected.  (citing *Jackson v. Sedgwick*, 731 F.3d 556 (6th Cir. 2013 (*en banc*)). Simply stated, RICO 'is not a means for federalizing personal injury tort claims arising under state law.'"** *Id.* at 568-69."  (emphasis supplied).  Additionally, this Court has admonished Mr. Deters for his continued practice of filing lengthy and virtually unintelligible complaints, replete with numerous violations of the Federal Rules of Civil Procedure.

89).[2]   At the time of the surgeries, however, PureGen was allegedly not appropriately registered with nor approved by the FDA.  (*Id.* at ¶¶ 4(h), 6(b)).  Plaintiffs allege that the manufacture, distribution, and use of PureGen constituted a fraudulent scheme, perpetrated collectively by all named defendants, to test and market PureGen without properly complying with the appropriate federal regulations.  (*Id.* at ¶¶ 1-2).  The scheme is described in the FAC as follows:

> Defendants reaped significant profits by 1) using patients as research subjects without their knowledge, 2) charging the patients and their insurers for implants that were not used in compliance with the FDA approval process and which uses were not disclosed to the patients as necessary to obtain informed consent, 3) knowingly concealing the charges for the implants, not reporting to the patient or insurer that the devices were not approved for such use, not obtaining precertification for such use, not obtaining informed consent for experimental use, and 4) knowingly performing medically unnecessary surgeries while representing them as medically necessary.

(*Id.* at ¶ 1).

In total, the FAC is 59 pages long and consists of 228 numbered paragraphs, not including a vast number of unnumbered subparagraphs.  (Doc. 3).  Plaintiffs' proposed Second Amended Complaint (the "SAC") is <u>twice as long</u>, and seeks to add new parties.  (Doc. 38-3).  Similar to the FAC, the 116-page, 1048 paragraph proposed SAC suffers from both extraordinary disorganization and absolute deficiency.  (*Id.*)

---

[2] PureGen was classified as a "human cell, tissue, and cellular or tissue-based product ("HCT/P")."  (Doc. 24 at 1).  HCT/Ps are "articles containing or consisting of human cells or tissue that are intended for implantation, transplantation, infusion, or transfer into a human recipient."  21 C.F.R. § 1271.3(d).  Establishments manufacturing HCT/Ps are required to comply with federal regulations enforced by the Food and Drug Administration (the "FDA").  21 C.F.R. §§ 1271.1, *et seq.*  The proper classification of an HCT/P determines which regulatory provisions are applicable.  21 C.F.R. § 1271.20.

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While Rule 8 "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

However, where the complaint contains allegations of fraud, the plaintiff must also meet the heightened pleading standard set forth under Fed. R. Civ. P. 9(b).  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012).  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  To meet Rule 9(b)'s heightened particularity requirement, the plaintiff "at a minimum, must 'allege the time, place, and content of the alleged misrepresentation … the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"  *Heinrich*, 668 F.3d at 403 (quoting *United States ex rel. Bledsoe v. Cmty Health Sys.*, 342 F.3d 634, 643 (6th Cir. 2003)).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true.  *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir.

4

2009). However, pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the Complaint shall be dismissed. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

### B. Motion to Amend

Federal Rule of Civil Procedure 15(a) governs amendments to the pleadings. A complaint may be amended once as a matter of course within twenty-one days of service of responsive pleadings. Fed. R. Civ. P. 15(a)(1)(B). Thereafter, a plaintiff may amend the complaint either with consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), "[t]he court should freely give leave [for a

5

party to amend the pleadings] when justice so requires." The rule is to be liberally construed in favor of allowing amendments, and reinforces the principle that cases "should be tried on their merits." *See, e.g., Moore v. Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). However, the court may find denial appropriate "where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if, even after amendment, the complaint could not withstand a Rule 12(b)(6) motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). However, in the absence of such factors, leave is generally granted. *Moore*, 790 F.2d at 562.

### III.  ANALYSIS

#### A.  Defendants' Motions to Dismiss

Collectively, Defendants' motions and memoranda thoroughly address the arguments in support of dismissing the FAC.[3] (Docs. 15, 19, 24, 25, 26, 44). <u>First</u>, dismissal is appropriate because the FAC fails to comply with Rule 8. <u>Second</u>, Plaintiffs claims are preempted under federal law. <u>Third</u>, Counts I and II should be dismissed because Plaintiffs fail to assert a valid state or federal RICO claim.

---

[3] Having reviewed all pending motions, and given the overwhelming grounds for dismissal, the Court focuses in this Order on those arguments most frequently raised by Defendants and generally applicable to all parties.

### 1.  *The FAC Violates Federal Rule of Civil Procedure 8*

Dismissal of the FAC under Rule 8 is appropriate because: (1) the FAC does not provide a "short and plain statement of the claim[s]" supported by sufficient factual allegations; (2) the FAC does not give Defendants fair notice of the claims against them; and (3) Plaintiffs fail to edit and organize the FAC into a coherent pleading.

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the "short and plain statement" requirement is to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554 (emphasis supplied) (internal quotations omitted).  Accordingly, a complaint must also contain sufficient facts from which "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Furthermore, the allegations "must be presented with intelligibility sufficient for a court or opposing party to understand whether a [] claim is [valid]." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1995) (emphasis supplied) (internal quotations omitted).  Accordingly, the Court may dismiss a complaint for violation of Rule 8 if it "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (internal quotations omitted).

### a.  The "Short and Plain Statement" Requirement

The FAC is neither short, nor plain – nor is the proposed SAC.  Indeed, the 59-page FAC largely simply repeatedly belabors the allegation that the named defendants colluded in a scheme to turn unsuspecting patients into human test subjects for the sole

purpose of turning a profit without complying with FDA regulations.  (Doc. 3).
Ambitious as the allegations may be, <u>dismissal would **not** be warranted **if** the FAC
contained sufficient facts to show that Plaintiffs' claims are facially plausible</u>.  *Twombly*,
550 U.S. at 556.  However, **the FAC is comprised entirely of conclusory assertions**.
For example, at the core of Plaintiffs' claims is the allegation that all named Defendants
conspired and collectively engaged in a fraudulent scheme.  (Doc. 3 at ¶¶ 1, 4).  How-
ever, <u>the FAC fails to set forth any facts showing that all named Defendants even
communicated with one another</u>.  In fact, the FAC focuses almost exclusively on the
relationship between just two of the nine named Defendants.  (*Id.* at ¶¶ 21-61).  With little
exception, the remainder of the FAC either refers vaguely to "Defendants" in the aggregate, or
focuses on Plaintiffs' surgeries, which were performed by Defendant Atiq Abubakar Durrani,
M.D.  (Doc. 3).

  Furthermore, the FAC does not contain a single factual allegation to explain
Plaintiffs' theory that Defendants conspired to defraud the public and the government,
elude the FDA, and conduct dangerous medical experiments on unsuspecting patients.
(Doc. 3).  Instead, Plaintiffs simply repeatedly refer to Defendants' alleged scheme as
being "motivated by greed and a desire to gain a competitive advantage."  (*Id.* at ¶¶ 2,
26).  However, these statements are neither factual, nor sufficient.

  Plaintiffs' failure to provide a "short and plain statement of the claim[s]" --
supported by factual allegations -- warrants dismissal of the FAC.

**b.  Notice to Defendants**

The FAC fails to provide Defendants with sufficient notice of the claims asserted

against them.  *Twombly*, 550 U.S. at 554.  Plaintiffs' reference to "Defendants"

collectively fails to specify the conduct attributable to each party and is, therefore,

insufficient to meet Rule 8's notice requirement.  *Laster v. Pramstaller*, No. 08-CV-

10898, 2008 WL 1901250, at *2 (E.D. Mich. Apr. 25, 2008) (holding that allegations

against "defendants" does not meet the Rule 8 notice requirement as it "fails to tie

together a certain defendant with a particular action").[4]

Plaintiffs argue that reference to "all Defendants" is sufficient, because the FAC

alleges that "all Defendants" conspired and engaged in the conduct, ultimately resulting

---

[4] Examples of Plaintiffs' vague references to Defendants' collective conduct include:

> "Defendants knew or should have known that Puregen was not safe for human use."  (Doc. 3 at ¶ 29(a)).

> "Defendants knowingly provided Puregen to Dr. Durrani."  (*Id.* at ¶ 37).

> "Defendants knowingly presented, or caused to be presented, a fraudulent claim for payment or approval."  (*Id.* at ¶ 45).

> "Defendants [] conduct[ed] the experimental surgeries on patients and release[d] the skewed results without having other researchers or protocol second-guess them."  (*Id.* at ¶ 58).

> "The Defendants concealed serious medical risks and complications to increase profits."  (*Id.* at  ¶ 60).

> "The Defendants participated in paying, receiving, and laundering of kickbacks for their own direct gain as individuals and to induce the purchase of PureGen."  (*Id.* at ¶ 62).

> "The Defendants and each of them knew the surgeries were experimental in nature and the patients had not been informed."  (*Id.* at ¶ 66(e)).

in Plaintiffs' injuries.  (Doc. 51 at 4; Doc. 53 at 5; Doc. 54 at 4-5; Doc. 56 at 3).

However, as this Court has already determined, the FAC does not provide any facts to

support the allegation that <u>all Defendants</u> colluded in the alleged fraudulent scheme.

Therefore, Plaintiffs' failure to distinguish between each Defendant's conduct and

potential liability violates Rule 8's notice requirement.  *See Aaron, et al. v. Durrani, et al.*,

Case No. 1:13-cv-202 (Doc. 111 at 7-8 (citations omitted) (S.D. Ohio Mar. 13, 2013).

### c. <u>Organization of the Pleading</u>

The failure of Plaintiffs to organize and edit the FAC coherently constitutes a

violation of Rule 8 and warrants dismissal.  Pleadings which are "rambling, disorganized,

[and] undecipherable … [are] unacceptable." *Smith v. City of Chattanooga*, No. 1:10-cv-

206, 2010 WL 5257238, at *2 (E.D. Tenn. Dec. 17, 2010).  Such pleadings "exact an

intolerable toll on the trial court's docket, lead to unnecessary … discovery, and impose

unwarranted expense on the litigants, the court and the court's … personnel and

resources." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997).  Plaintiffs

bear the responsibility "to edit and organize their claims <u>and supporting allegations</u> into a

manageable format." *Hollon v. E. Ky. Corr. Complex*, No. 10-CV-177-KSF, 2010 WL

2924091, at *2 (E.D. Ky. July 22, 2010) (emphasis supplied).

Plaintiffs erroneously argue that Rule 8's pleading requirements apply only to the

<u>claims</u> (*i.e.*, causes of action) set forth in the complaint.  (Doc. 51 at 3).  However,

Plaintiffs' narrow focus on the word "claim" under Rule 8(a)(2) disregards all other

provisions of Rule 8.  In particular, Rule 8(d)(1) provides that "[e]ach <u>allegation</u> must be

simple, concise, and direct" (emphasis supplied).  Accordingly, the requirements of Rule 8 apply to complaints in their entirety.

Plaintiffs further allege that the length of the FAC is appropriate given the complex nature of the scheme.  (Doc. 51 at 3).  Once again, Plaintiffs fail to take all pleading requirements into account.  The complexity of the alleged scheme does not relieve Plaintiffs of their responsibility to <u>organize the complaint coherently</u>.  *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) ("The necessity for complexity … does not give litigants license to plead by means of obfuscation").  To be clear, the Court does not take issue with the length of the FAC, specifically.  Indeed, a complaint that raises fraud and RICO claims is not only expected, but is also <u>required</u>, to plead factual allegations with greater detail and particularity.  Fed. R. Civ. P. 9(b).  However, **particularity and prolixity are not synonymous**.[5]  Even when heightened pleading standards apply, Plaintiffs must still comply with Rule 8's basic requirements.  *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503-04 (6th Cir. 2008).  Rule 9(b) does not obviate basic pleading requirements, but instead "should be interpreted in harmony with Rule 8[]."  *Id.*

Here, the FAC is nearly impossible to comprehend.  Plaintiffs' long-winded allegations merely string together conclusory, and at times conflicting, accusations.  Devoid of all substance, Plaintiffs rely on repetition and hyperbole to bolster their claims.  Additionally, the pleadings are bogged down with citations and statutory language from

---

[5] *See Jennings*, 910 F.2d at 1435-36 ("by necessity, most RICO complaints will be somewhat complex … [but they] must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of … whether a valid claim is alleged and if so what it is").

state and federal laws, most of which are neither properly asserted as claims, nor apparently related to the case.  In short, the state of the FAC is wholly unacceptable.

The failure of Plaintiffs to present the Court and Defendants with a coherent pleading that provides "a short and plain statement of the claim[s]" supported by "simple, concise, and direct" factual allegations, violates Rule 8 and warrants dismissal.

### 2. Preemption of Plaintiffs' Claims Under Federal Law

All of Plaintiffs' claims are based upon Defendants' alleged failure to comply with applicable regulations under the Federal Food, Drug, and Cosmetic Act (the "FDCA"), and the claims are therefore preempted as a matter of federal law.  The FDA is charged with enforcement of the provisions of the FDCA.[6]  *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).  The FDCA neither expressly, nor impliedly creates a private right of action.  *Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995).  Accordingly, claims for violations of the FDCA brought by private litigants are impliedly preempted.  *Loreto v. Procter & Gamble*, 515 F.App'x. 576, 578-79 (6th Cir. 2013).  This remains true so long as the "claim is in substance (<u>even if not in form</u>) a claim for violating the FDCA." *Id.* at 579 (emphasis supplied) (internal quotations omitted).  A claim is impliedly preempted if it "would not exist in the absence of the FDCA."  *Id*.

As pled, Plaintiffs' claims are impliedly preempted by the FDCA.  Notwithstanding the varied causes of action, the allegations throughout the FAC are structured entirely upon the premise that Defendants sought to profit from a scheme to violate the

---

[6] Proceedings for enforcement or to restrain violations of the FDCA "shall be by and in the name of the United States."  21 U.S.C. § 337.

FDCA and perpetrate fraud against the FDA.  (Doc. 3).  The fact that Plaintiffs were victimized as a result of Defendants' alleged fraud does not alter the substance of the allegations.  As they stand, Plaintiffs' claims fall squarely within the purview of the FDA. *Buckman*, 531 U.S. at 349 n.4 ("[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance").  Plaintiffs even state that "[t]he United States Government … and the public interest have been damaged as a result of Defendants criminal conduct, and the Plaintiffs pursuing their interest will deter the injurious conduct to the public."  (Doc. 3 at ¶ 100).  This is not a task appropriate for private litigants when "the federal statutory scheme [of the FDCA] amply empowers the FDA to punish and deter fraud."  *Buckman*, 531 U.S. at 348.

Plaintiffs' claims, as asserted, are entirely reliant upon the alleged fraudulent scheme to violate federal regulation while eluding the FDA and are, therefore, impliedly preempted under federal law.

### 3. Failure to Plead a Valid RICO Claim – Counts I & II

Dismissal of Counts I and II is warranted, because Plaintiffs lack standing to assert a claim under RICO for recovery of personal injury; and, even if Plaintiffs did possess standing, they fail substantively to plead a valid state or federal RICO claim.[7]

---

[7] Count I of the FAC asserts the private right of action under the Ohio RICO statute pursuant to Ohio Rev. Code § 2923.34.  (Doc. 3 at ¶¶ 92-103).  Count II asserts the civil remedy provision of the federal RICO statute pursuant to 18 U.S.C. § 1964.  (*Id.* at ¶¶ 104-13).  The Ohio RICO statute was modeled after its federal counterpart and "Ohio courts look to federal [RICO] case law … when analyzing claims brought under [Ohio RICO]."  *Cochran v. VendMasters, Inc.*, No. 3:04-CV-024, 2006 WL 2709777, at *5 (S.D. Ohio Sept. 20, 2006).  Accordingly, the Court may appropriately address both Ohio and federal RICO claims together under federal law.  *Id.*

### a. **Failure to Plead Injury to "Business or Property"**

Sixth Circuit precedent is clear that personal injuries, such as those claimed by Plaintiffs here, are not injuries to "business or property," as required to state a claim under RICO. *Jackson v. Sedgwick*, 731 F.3d 556, 565 (6th Cir. 2013) (*en banc*). This limitation ensures that RICO is not expanded to provide "a federal cause of action and treble damages to every tort plaintiff." *Oscar v. University Students Co-op Ass'n,* 965 F.2d 783, 786 (9th Cir. 1992) (*en banc*), *cert. denied*, 506 U.S. 1020 (1992).

Plaintiffs' collective claims relate entirely to their individual medical malpractice claims, which truth is emphasized by Plaintiffs' inclusion of hundreds of paragraphs summarizing these claims. Thus, Plaintiffs' claims for damages relate directly to alleged consequential damages stemming from Plaintiffs' surgeries which were performed by Dr. Durrani. But these damages are the exact same damages that Plaintiffs seek to recover in their separately filed medical malpractice actions. Plaintiffs are simply attempting to recast their medical malpractice claims as RICO claims. However, Plaintiffs lack standing to assert RICO claims.

The Sixth Circuit has held that RICO "'excludes recovery for personal injuries.'" *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 644 (6th Cir. 1986) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985) (Marshall, J., dissenting)). Under RICO, both personal injuries and pecuniary losses flowing from those personal injuries are insufficient to confer standing under § 1964(c). *Brown v Cassens Tranps. Co.*, 675 F.3d 946, 970 (6th Cir. 2012) (citing *Evans v City of Chicago,* 434 F.3d 916, 926 (7th Cir. 2006); *Grogan v. Platt,* 835 F.2d 844 (11th Cir. 1988)). Because Plaintiffs' alleged

14

damages are intimately related to their personal injuries, Plaintiffs do not have standing to sue under RICO. *Lewis v. Drouillard*, 788 F.Supp.2d 567 (E.D. Mich. 2011); *See also Fisher v. Halliburton*, Nos. 05-1731, 06-1971, 06-1168, 2009 U.S. Dist. LEXIS 117427, at *24-25 (S.D. Tex. Dec. 17, 2009).

Specifically, Plaintiffs lack statutory standing under the civil RICO provisions because they fail to allege injury to their "business or property." *Sedima*, 473 U.S. at 496.[8] Section 1964(c) expressly affords the private right of action under RICO to "[a]ny person injured in his <u>business or property</u> by reason of a violation of [18 U.S.C. § 1962]" (emphasis supplied). The words "business or property" place a limitation on the types of injuries that are able to be redressed under civil RICO. *Jackson,* 731 F.3d at 565. It is well settled that personal injury is not cognizable under RICO's civil remedies provision. *Id.* at 565-66 ("the concept is clear: both personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c)").[9]

Moreover, the FAC unequivocally states that Defendants' "false or fraudulent claims [were] approved or paid <u>by the Government and other insurers</u>." (Doc. 3 at ¶ 95) (emphasis supplied). Accordingly, Plaintiffs did not suffer the financial loss at the very

---

[8] *See also Brown v. Cassens Transp. Co.*, 675 F.3d 946, 969 (6th Cir. 2012) ("without an allegation of damages to business or property by reason of a violation of § 1962, Plaintiffs will not have standing to pursue their RICO claims" (Gibbons, J., dissenting)).

[9] *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("[t]he phrase 'business or property' … exclude[s] personal injuries suffered"); *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992) ("all other courts construing this language have likewise concluded" that "[t]he terms 'business or property' are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom").

core of this case.[10]  Regardless, Plaintiffs seek "treble damages, civil penalties, disgorge-

ment of gross receipts and profits, the imposition of a constructive trust, attorneys' fees,

expenses, exemplary damages and all other applicable remedies," resulting from

Defendants' fraud.  (*Id.* at ¶ 3).  None of the damages sought, however,  are recoverable

under RICO as they arise out of Plaintiffs' personal injury claims rather than injury to

"business or property." *Jackson*, 731 F.3d at 565 ("personal injuries and any pecuniary

losses proximately resulting from a personal injury caused by a RICO violation, e.g.

attorney fees, lost wages, and medical expenses, are … not recoverable" (internal

quotation marks omitted)).

    Nevertheless, even though personal injury is not recoverable under RICO,

plaintiffs may recover monetary damages under RICO for injuries arising out of a

consumer's property rights. *Jackson*, 731 F.3d at 565.  Apparently having recognized

this, Plaintiffs now argue that their RICO claims seek recovery "for the deprivation of

their property interest inherent in purchasing [PureGen]."  (Doc. 53 at 8).  Plaintiffs assert

that the loss is recoverable under RICO because their "[o]wnership of PureGen product is

not the result of the medical procedures performed," but rather from being "deceived into

purchasing a faulty medical device."  (*Id.*)  The Court disagrees.

    In support of their argument, Plaintiffs cite to *Jones v. Ram Med., Inc.*, in which

the District Court of South Carolina held that personal injury claims did not preclude

--------

[10] The FAC makes vague reference to Defendants usurping "Plaintiffs' right to make a claim."
(Doc. 3 at ¶¶ 95, 103).  However, Plaintiffs do not specify where this "right" allegedly arises.  To
the extent that Plaintiffs are referring to their medical procedures being the basis for the alleged
false claims, this is not equivalent to their asserted "right to make a claim."

recovery under RICO where the plaintiff also sufficiently pled monetary loss for the cost of a counterfeit medical device, as well as the cost of surgically implanting and removing the device.  807 F.Supp.2d 501, 512 (D.S.C. 2011).  However, *Jones* is distinguishable from the instant case.  The *Jones* plaintiff was implanted with a surgical mesh device sold by the defendants, which the FDA later determined was actually a counterfeit device manufactured in China.  *Id*. at 507.  As a result, the plaintiff suffered health complications and ultimately had to undergo surgery to have the counterfeit mesh removed.  *Id*.  In the instant case, Plaintiffs allege that they underwent medically unnecessary surgeries that involved a product misclassified under the FDA and, therefore, not in compliance with the appropriate regulations.  (Doc. 3 at ¶¶ 1, 2).  In essence, the *Jones* plaintiff paid for a particular product, but received a counterfeit product.  Therefore, his damages arose from his deprivation of property.  Conversely, Plaintiffs do not allege that they were deprived of property.  Instead, Plaintiffs focus on Defendants' scheme to conduct "human experimentation" and profit from performing "medically unnecessary surgeries."  (*Id.* at ¶¶ 1, 2, 66).  These allegations give rise to personal injury claims, not property damage.  Furthermore, Plaintiffs do not sufficiently allege that PureGen's lack of compliance with the appropriate federal regulations caused a defect in the <u>actual product</u>, but rather that the product was implanted as part of a medically unnecessary surgery.  (*Id.*)  Again, the harm focuses on the <u>conduct</u>, not the <u>product</u>.  Therefore, Plaintiffs' claims are for the personal injury resulting from Defendants' alleged conduct, rather than "from a consumer's monetary injury <u>arising</u>

directly out of a retail purchase."  *Jackson*, 731 F.3d at 565 (emphasis in original)

(internal quotation marks omitted).

Plaintiffs fail to allege that they were injured in their "business or property" and,

therefore, lack statutory standing to recover under RICO.

### b.  Plaintiffs Fail to Plead the Elements of a RICO Claim.

To state a valid claim, the complaint "must contain direct or inferential allegations

respecting all [] material elements under some viable legal theory."  *Commercial Money*

*Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).  A civil RICO

complaint must plead the elements of the alleged violation.  *Sedima S.P.R.L. v. Imrex*

*Co., Inc.*, 473 U.S. 479, 496 (1985).

Section 1962 of the RICO statute includes four distinct "prohibited activities."  18

U.S.C. § 1962(a)-(d).  The existence of an "enterprise"[11] and "racketeering activity"[12] are

elements of each of the four offenses.  *Id.*  Therefore, a civil RICO claim must plead both

---

[11] The statutory definition of "enterprise" is substantively similar under both Ohio RICO and
federal RICO.  *Compare* Ohio Rev. Code § 2923.31(C) ("'Enterprise' includes any individual,
sole proprietorship, partnership, limited partnership, corporation, trust, union, government
agency, or other legal entity, or any organization, association, or group of persons associated in
fact although not a legal entity"), *with* 18 U.S.C. § 1961(4) ("'enterprise' includes any
individual, partnership, corporation, association, or other legal entity, and any union or group of
individuals associated in fact although not a legal entity").

[12] The Ohio RICO statute deviates slightly in form from federal RICO by proscribing
participation in "corrupt activity" rather than "racketeering activity."  Ohio Rev. Code § 2023.32.
However, the Ohio RICO statute specifically defines "corrupt activity" to include all predicate
offenses which constitute "racketeering activity" under §§ 1961(1)(B)-(E) of federal RICO.
Ohio Rev. Code § 2923.31(I)(1).  Therefore, the variation in terms has little substantive effect, as
both largely encompass the same offenses.

18

the existence of an "enterprise" and "racketeering activity," regardless of which § 1962 subsection is asserted.[13]

## 1. **The RICO "Enterprise"**

The term "enterprise" is to be broadly construed in order to effectuate the RICO statute's remedial purpose. *Boyle v. United States*, 556 U.S. 938, 944 (2009). The statute does not specify "the outer boundaries of the 'enterprise' concept," however, it defines the term to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id*. (citing 18 U.S.C. §1961(4)). The statute essentially creates two categories of RICO enterprises: (1) legal entities such as corporations and partnerships; and (2) informal associations-in-fact. *United States v. Turkette*, 452 U.S. 576, 581-82 (1981).

An association-in-fact enterprise must have a structure including "at least three features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. The existence of "an association-in-fact enterprise, 'require[s] a certain amount of organizational structure which eliminates simple conspiracies from [RICO's] reach.'" *Ouwinga v. Benistar 419 Plan Servs*., 694 F.3d 783, 794 (6th Cir. 2012) (quoting *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th 2000)).

---

[13] The Court cannot specify the "prohibited activity" at issue in the instant case, because Plaintiffs do not expressly identify the applicable § 1962 subsection. (Doc. 3 at ¶¶ 104-13). Furthermore, the allegations in the FAC do not track the statutory language of any of the four provisions closely enough to evidence Plaintiffs' intent. (*Id.*)

However, the Supreme Court has recognized that the structure of the enterprise does not need to be formal, sophisticated, or complex.  *Boyle*, 556 U.S at 948.

> [A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose.  Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.

*Id*. (citing generally, *Turkette*, 452 U.S. 576).

Although an informal structure will suffice to meet the statutory definition of "enterprise," "[a] properly pled RICO claim must cogently allege activity 'that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'"  *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) (finding pleadings deficient where "the complaint essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages.") (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir 1993)).  Specifically, "the complaint must contain facts suggesting that the behavior of the listed entities is "'coordinated' in such a way that they function as a 'continuing unit.'"  *Begala*, 214 F.3d at 781-82 (emphasis supplied).

Here, Plaintiffs fail to set forth sufficient factual allegations to show that all named defendants coordinated in such a way as to constitute a RICO "enterprise."  As previously noted, Plaintiffs' allegations regarding the fraudulent scheme focus almost exclusively on the conduct of only two defendants, Alphatec and Parcell.  (Doc. 3 at

20

¶¶ 21-61).  As the co-developers of PureGen, Alphatec and Parcell undoubtedly "coordinated" with one another within the boundaries of their business relationship. (Doc. 3 at ¶ 21).  Beyond their professional association, however, Plaintiffs fail to provide a factual basis from which to infer that Alphatec and Parcell were actually engaged in a criminal "enterprise."  Accordingly, Plaintiffs' ultimate assertion that, not only Alphatec and Parcell, but <u>all named Defendants</u>, formed a RICO "enterprise" is <u>entirely unsupported</u>.

Furthermore, the only allegations Plaintiffs include in the FAC regarding the "enterprise" are:

> Defendants acting as individuals and/or through their officers, employees, agents adjusters, and independent contractors, and in concert through their fraudulent enterprise and civil conspiracy, knowingly made, used, or caused to be made or caused to be used, false records in support of false claims.
> …
>
> [T]he Defendants operated in some combination to perpetuate and effectuate their fraudulent scheme against similar victims over an extended period of time using the same or similar acts and omissions with fraudulent intent.  Defendants each took affirmative steps or intentionally failed to act for the purpose of furthering the enterprise, and thereby participated in the enterprise.

(Doc. 3 at ¶¶ 93, 109-10).  These assertions are devoid of any specificity regarding the longevity of the alleged scheme, or how the Defendants coordinated as a continuing unit. *See Begala*, 214 F.3d at 781-82.  Again, not only are the allegations insufficient to show that Defendants coordinated with one another, there are no facts to support the inference that Defendants even communicated with one another.

Therefore, Plaintiffs fail to sufficiently plead the existence of an "enterprise," in support of their civil RICO claims.

### 2. **"Racketeering Activity"**

Plaintiffs fail to plead sufficiently that Defendants engaged in "racketeering activity," as required to show violations of § 1962.  Section 1961(1) sets forth an extensive list of predicate offenses, all of which constitute "racketeering activity." 18 U.S.C. § 1961(1).  When the predicate act alleged is a fraud-based offense, the "racketeering activity" must be pled with sufficient particularity to meet the heightened standard of Fed. R. Civ. P. 9(b).  *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 365 n.4 (6th Cir. 2008).

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To meet the heightened particularity requirement, "the plaintiffs, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation … the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"  *Heinrich*, 668 F.3d at 403 (quoting *Bledsoe*, 342 F.3d at 643).  Although "Rule 9(b) does not require omniscience," it does require that "the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."  *Williams v. Duke Energy Int'l*, 681 F.3d 788, 803 (6th Cir. 2012) (internal quotation marks omitted).

In the instant case, Plaintiffs allege predicate acts of mail and wire fraud (18 U.S.C. §§ 1341, 1343), money laundering (18 U.S.C. §§ 1956, 1957), and transportation

of stolen goods (18 U.S.C. § 2314).[14]  (Doc. 3 at ¶ 106).  Since Plaintiffs assert that

Defendants committed fraud-based offenses, Counts I and II must meet Rule 9(b)'s

heightened pleading standard.  Fed. R. Civ. P. 9(b).

### i.  Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)

For claims of mail and wire fraud, Plaintiffs must allege: (1) a scheme to defraud;

and (2) use of either the mails or wire transmissions in furtherance of the scheme.

*Heinrich*, 668 F.3d at 404 ("The elements of wire fraud [and mail fraud] are essentially

the same except that one must use the wires in furtherance of the scheme to defraud").

As an initial matter, the facts offered in support of Counts I and II make no factual

reference to Defendants' alleged use of the mails or wires, but instead merely recites

the statutory language.[15]  (Doc. 3 at ¶¶ 104-13).  Plaintiffs' failure to sufficiently plead

this most basic element of mail and wire fraud (*i.e.*, use of the mails and wires) is more

than sufficient to show that the predicate offenses have not been properly alleged.

---

[14] Each of the predicate acts alleged constitutes "racketeering activity" as defined under 18 U.S.C. § 1961(1)(B).  Accordingly, these predicate acts also qualify as "corrupt activity" under Ohio RICO.  Ohio Rev. Code § 2923.31(I)(1).  In addition, Plaintiffs also include a list of various state law offenses as the basis for the RICO action in Count I.  However, the FAC does nothing more than recite the statutory language.  Accordingly, the pleadings are wholly insufficient to assert these offenses.

[15] Although Counts I and II incorporate "all previous paragraphs," and Count I references "all mail and wire fraud … herein alleged," this is not an acceptable method of pleading the factual basis for the predicate acts given the state of the FAC.  (Doc. 3 at ¶¶ 92, 96(a), 104).  First, the incorporation into a single claim of approximately 100 incoherently pled paragraphs wholly fails to provide "a short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  Moreover, even if the incorporated paragraphs were coherently pled, the Court has already established that the allegations contained therein are factually unsupported.

However, even if the Court were to interpret Plaintiffs' allegations that Defendants "made" false statements and "submitted" false claims as references to either mail or wire transmission, the allegations are still not pled with sufficient particularity under Rule 9(b).  To satisfy Rule 9(b)'s heightened standard, "[w]hen pleading predicate acts of mail and wire fraud …, a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Heinrich*, 668 F.3d at 404 (quoting *Frank v. Dana Corp*. 547 F.3d 564, 570 (6th Cir. 2008)).  Plaintiffs must "also identify[] the basis for inferring scienter."  *Id*. at 406 (internal citations omitted).  The complaint must "set[] forth specific facts that make it reasonable to believe that [the] defendant knew that a statement was materially false or misleading," at the time it was made.  *Id.* (internal citations omitted).

Here, Plaintiffs fail to "specify the statements that [they] contend were fraudulent" with sufficient particularity.  *Heinrich*, 668 F.3d at 404.  The FAC's allegations regarding countless fraudulent claims and records, including false statements about the safety and necessity of the medical services provided, are inadequately pled under Rule 9(b).[16]

---

[16] For example, with regard to the false records Plaintiffs assert:

> Th[e] false records included, but were not limited to: 1) false records generated for reimbursement of medical services … 2) false records generated for reimbursement of Puregen and other products containing PureGen, if they exist; 3) false records generated to conceal the fraudulent scheme … 4) false records generated in order to launder money … 5) and others.

(Doc. 3 at ¶ 94) (emphasis supplied).  However, the Court cannot rely on such generalized allegations when Plaintiffs are, by their own admission, uncertain as to whether some of the alleged "false records" even exist.

(Doc. 3 at ¶¶ 66(a)-(i)).  To plead the false statements adequately, the FAC must identify the fraudulent claim at issue, name the Plaintiff on whose behalf the claim was submitted, and specifically state the false statement contained therein.  *See Heinrich*, 668 F.3d at 404.  The FAC fails in this respect.  For instance, Plaintiffs allege that Defendants "us[ed] patients as research subjects" and "knowingly perform[ed] medically unnecessary surgeries."  (Doc. 3 at ¶ 1).  However, the factual allegations in the FAC do not show that all Plaintiffs were subjected to medically unnecessary surgeries.  (*Id.* at ¶¶ 69-89).  Rather, the facts allege that all Plaintiffs underwent surgery involving PureGen, some of which may have been medically unnecessary.[17]  (*Id.*)  Accordingly, Plaintiffs' allegations, as pled, are not sufficiently particular.  Plaintiffs are required to plead the precise false statement at issue with the requisite particularity under Rule 9(b).  *See Heinrich*, 668 F.3d at 404.  Merely alleging that Defendants' statements all contained <u>some</u> material falsity is insufficient.

Next, Plaintiffs' reference to "Defendants" collectively is insufficient to "identify the speaker" of the false statements.  As a practical matter, even if all named Defendants contributed to the fraud offense, they did not all simultaneously transmit the alleged false statements.  Therefore, Plaintiffs cannot accurately allege that false statements were made by all Defendants.  Additionally, Plaintiffs must plead specific factual allegations to show that the speaker knew the statements were materially false at the time they were made.

---

[17] The only fact in the FAC to support the allegation that the surgeries were unnecessary is the claim that prior to <u>one of the Plaintiff's surgeries</u>, "two other doctors who reviewed the radiology … determined that [Plaintiff's] spine was stable and noted no significant defects."  (Doc. 3 at ¶ 71).

*Heinrich*, 668 F.3d at 406.  However, the FAC includes only conclusory allegations that "Defendants … knew" the statements were false.  (Doc. 3 at ¶ 66).  Accordingly, even if collectively referring to "Defendants" were sufficient to identify the speaker, Plaintiffs still fail to "identify[] the basis for inferring scienter" with requisite particularity. *Heinrich*, 668 F.3d at 406 ("[t]he courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity").

Finally, the FAC does not specify where and when the false statements were made.  Plaintiffs' allegation that the scheme occurred "over an extended period of time" is too vague to meet the particularity requirement.  (Doc. 3 at ¶ 109).  Furthermore, the "extended period of time" refers to when the scheme occurred rather than when the false statements were made.  Plaintiffs' failure to provide the date on which the false statements were made violates Rule 9(b).  *See Heinrich*, 668 F.3d at 405 (finding that plaintiff's affidavit regarding fraudulent emails did not allege wire fraud with sufficient particularity, because plaintiff did not provide the dates that the emails were sent).  In addition, Plaintiffs do not allege where the false statements originated.

Accordingly, Plaintiffs fail to sufficiently plead mail and wire fraud as predicate acts in support of their civil RICO claims.

### ii.  Money Laundering (18 U.S.C. §§ 1956, 1957)

Plaintiffs also fail to sufficiently plead violations of the money laundering statutes under 18 U.S.C. §§ 1956 & 1957.  To plead a violation under either § 1956 or § 1957, Plaintiffs must show that Defendants engaged in a financial transaction involving property that they knew to be criminally derived, and which actually represented the

proceeds of "specified unlawful activity" at the time the transaction occurred.  18 U.S.C. §§ 1956, 1957.[18]  The term "specified unlawful activity" is defined as any criminal offense listed under § 1956(c)(7), including most offenses which constitute "racketeering activity" under § 1961(1) of the federal RICO statute.  18 U.S.C. § 1956(c)(7)(A).

Plaintiffs, however, neither directly, nor inferentially, plead the elements of either money laundering statute with sufficient particularity under Rule 9(b).  (Doc. 3 at ¶¶ 92-113).  The only allegation in the FAC that appears to relate to money laundering states that Defendants paid physicians for participating in the alleged fraudulent scheme and "mingled [the payments] together with other payments and without itemization to prevent the amounts from being readily determined."  (*Id.* at ¶ 61).  However, this bare assertion is insufficient under Rule 9(b) to address the material elements of the statute, including the "transaction," the "criminally derived property," and the "specified unlawful activity," from which the property was derived.

Therefore, Plaintiffs fail to plead violations of the money laundering statutes as predicate acts in support of their civil RICO claims.

---

[18] Plaintiffs assert both § 1956 and § 1957 as predicate acts for their civil RICO claims.  Section 1956 prohibits "laundering of monetary instruments."  18 U.S.C. § 1956.  Section 1957 prohibits "engaging in monetary transactions in property derived from specified unlawful activity."  18 U.S.C. § 1957.  Both statutes were enacted as the official federal money laundering statutes by passage of the Money Laundering Control Act of 1986.  Pub. L. No. 99-570, 100 Stat. 3207.  Furthermore, both statutes share many of the same elements and utilize commonly defined terms. 18 U.S.C. § 1956 (defining "transaction" to encompass the definition of "monetary transaction" under § 1957); 18 U.S.C. § 1957 (referring to § 1956 for definitions of "specified unlawful activity" and "proceeds").

### iii.  Transportation of Stolen Goods (18 U.S.C. § 2314)

Plaintiffs fail to plead the predicate act of transportation of stolen goods in violation of 18 U.S.C. § 2314.  Section 2314 proscribes six separate offenses involving the transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting.  18 U.S.C. § 2314.  At the core of each § 2314 offense is the interstate or foreign transport of goods, money, or persons, in furtherance of a fraudulent scheme.  *Id.*

Plaintiffs fail to provide any allegations that either directly or inferentially supports the assertion that Defendants committed an offense under § 2314.  Further, Plaintiffs fail to plead the § 2314 elements or refer to the statutory language.  Therefore, Plaintiffs fail to plead transportation of stolen goods as a predicate act in support of their RICO claims.

### B.  Plaintiffs' Motion for Leave to Amend the FAC

Plaintiffs seek leave to amend the FAC pursuant to Rule 15(a)(2).  (Doc. 38).  The Court may deny a motion to amend where "the infirmities in the original complaint [are] not cured by the allegations in the amended complaint."  *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995).  It is futile to allow a party to amend the complaint if "even after amendment, the complaint could not withstand a Rule 12(b)(6) motion to dismiss."  *Riverview Health*, 601 F.3d at 512.

Not only does the SAC fail to cure the deficiencies in the FAC, it exasperates them. (Doc. 38-3).  The FAC's most egregious error is its failure to comply with Rule 8. Apart from adding several bold, underlined headings, and eliminating the prolix

subparagraphs (which are now just numbered paragraphs), the SAC does nothing to add clarity or coherence to the pleading.  Furthermore, even at 116 pages and 1048 paragraphs, Plaintiffs still fail to provide sufficient factual allegations to support their claims.

The SAC could not survive a motion to dismiss under Rule 12(b)(6) as it fails to comply with basic pleading requirements.  Accordingly, Plaintiffs' proposed amendment is futile.

Moreover, this Court expressly advised Plaintiffs' counsel in a related case on September 13, 2013 of the deficiencies in his several prior attempts to amend and warned that failure to amend properly would result in dismissal without leave to try to amend again.  (*See* Doc. 76 at 7 in *Aaron, et al. v. Durrani, et al.*, Case No. 1:13-cv-202 (S.D. Ohio Sept. 12, 2013)).  The proposed SAC here was filed on November 12, 2013, two months after the Court's issuance of that explicit warning, and yet the proposed SAC again presents the very same deficiencies the Court previously and explicitly required and instructed Plaintiffs' counsel to correct.  Accordingly, Plaintiffs have thoroughly demonstrated that any further leave to amend would be futile.

## IV.  CONCLUSION

Based upon the foregoing:

1. Defendants' motions to dismiss (Docs. 15, 19, 24, 25, 26, 44) are **GRANTED**;

2. Plaintiffs' motion for leave to file a second amended complaint (Doc. 38) is **DENIED**;

3. All of Plaintiffs' claims against all named Defendants are **DISMISSED**;

4. Defendants' motions to strike class action allegations (Docs. 27, 31, 32, 42, 46) are **DENIED AS MOOT**; and

5. The clerk shall enter judgment accordingly, and this case is **CLOSED**.

**IT IS SO ORDERED**.

Date:   _6/26/14_ _____                    ____ _/s/ Timothy S. Black_ ____
                                                Timothy S. Black
                                                United States District Judge